671 S.E.2d 776

### In re CHARLESTON GAZETTE FOIA REQUEST.

### No. 33812.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2008.

Decided Dec. 9, 2008.

Concurring Opinion of Justice Benjamin Jan. 9, 2009.

Ancil G. Ramey, Esq., Bryan Cokeley, Esq., Hannah B. Curry, Esq., Steptoe & Johnson, PLLC, Charleston, for Appellant.

Rudolph L. DiTrapano, Esq., Sean P. McGinley, Esq., DiTrapano Barrett & DiPiero, PLLC, Charleston, for Appellee.

PER CURIAM.[1]

The appellant, the City of Charleston (hereinafter "the City"), appeals the dismiss-

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary,

al of its declaratory judgment action filed on August 9, 2007, wherein it sought a declaration of its rights and obligations in responding to a request made by the *Charleston Gazette* newspaper (hereinafter "the *Gazette*") pursuant to the Freedom of Information Act (hereinafter "FOIA"). On July 6, 2007, the *Gazette* requested "inspection and copying all records related to" weekly payroll time sheets and activity logs for certain named police officers of the Charleston Police Department (hereinafter "the CPD"). The City denied the request and then filed this declaratory judgment action. On August 22, 2007, the circuit court dismissed the City's complaint *sua sponte*. Two days later, the City filed a motion to alter or amend the judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. On August 27, 2007, the circuit court entered an amended order again dismissing the case and reiterating its previous finding that a declaratory judgment in this matter would not terminate the controversy. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court erred by *sua sponte* dismissing the City's declaratory judgment action. We therefore find that the City must disclose the records sought by the *Gazette*. Thus, the final order of the circuit court is remanded for further proceedings consistent with this opinion.

## I.

### FACTS

As discussed above, the *Gazette* submitted a FOIA request to the City on July 6, 2007, requesting copies of weekly payroll time sheets and activity logs for certain named police officers employed by the CPD. The *Gazette* sought the information following public allegations that some police officers were "double-dipping." In other words, it was alleged that while these police officers were on duty for the City, they were also employed at the very same time by private entities as security guards, and therefore, they were collecting two pay checks at the same time-one from the City and one from the private employer.

The allegations of double dipping became public when a police officer was prosecuted for such behavior. The officer publicly stated that it was a common occurrence for other City police officers to engage in the same conduct; however, he stated that those other officers were not being prosecuted. Thus, the *Gazette*, believing it was acting in the public's interest, sought to inspect the public records showing the times worked and paid for by public dollars for other police officers, in an effort to determine whether other police officers were in fact double-dipping.

On July 18, 2007, the City denied the *Gazette's* FOIA request and listed four reasons for its decision. The City first stated that some of the documents sought by the *Gazette* directly pertained to an ongoing criminal investigation being undertaken by the CPD. Next, the City stated that Kanawha County Circuit Judges Jennifer Bailey Walker and Tod Kaufman had both issued protective orders, in proceedings separate from the *Gazette's* request, sealing the records of six of the twenty-eight officers who were the subject of the *Gazette's* document request. Third, the City indicated that it was uncertain about releasing the documents in question because Judge Walker ruled, when similar information was sought by a defendant for use in his criminal case, "that the type of information requested by Defendant, some of which would have to be obtained from personnel files, together with the proffer of the CPD about that information, would trigger the protections afforded under *Manns* [*v. City of Charleston Police Department*, 209 W.Va. 620, 550 S.E.2d 598 (2001)] and *Maclay* [*v. Jones*, 208 W.Va. 569, 542 S.E.2d 83 (2001)]." Finally, the City explained that it had received a letter from the Fraternal Order of Police, Capitol City Lodge 74, on behalf of some or all of the officers whose records were requested by the *Gazette*, "request[ing] that the City not produce these records absent a court order."

On August 1, 2007, the *Gazette* replied to the City's denial by disputing the City's reasons for non-disclosure and asking the City

in light of the illness of Justice Joseph P. Albright.

to reconsider its denial to provide the documents in question. On August 9, 2007, the City filed a complaint for declaratory judgment in the Circuit Court of Kanawha County. On August 22, 2007, before the *Gazette* filed a response, the circuit court dismissed the City's complaint, *sua sponte.* The circuit court found that an order in the case would not be of practical assistance in setting the controversy to rest. The circuit court further explained that, "were this Court to enter the requested declaratory judgment, the documents would still remain under seal, and thus, the underlying controversy of this matter would persist."

On August 24, 2007, the City filed a motion to alter or amend judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. It argued that the protective orders in question only sealed some of the documents requested by the *Gazette*, while other requested documents were not under seal. On August 27, 2007, the circuit court entered an amended order dismissing the complaint and noted that "some of the documents" at issue were under seal by orders of Judges Walker and Kaufman. The circuit court then reiterated its previous point that the controversy would not end with an order for the requested declaratory judgment. The appellant appealed the circuit court's final order, which is the subject of our review today.

## II.

### STANDARD OF REVIEW

■ In Syllabus Point 1 of *State v. Paynter*, 206 W.Va. 521, 526 S.E.2d 43 (1999), we held, " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." We have further indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997).

## III.

### DISCUSSION

In this appeal, the City argues that the circuit court erred by dismissing its case without providing notice and opportunity to be heard in opposition of the dismissal. The City maintains that this Court has held that due process requires notice and an opportunity to be heard before a case is dismissed. The City contends that it had a legitimate argument that dismissal was improper and that its complaint had set forth specific factual averments that a controversy existed and that a declaration of the rights of the parties would settle the underlying controversy. In that regard, the City points out that there are twenty-two officers whose records were not directly covered by either Judge Kaufman or Judge Walker's orders and, as such, the circuit court erred in using that as its reasoning for denying the City's request for declaratory judgment. Moreover, it explains its confusion with whether to release the information as the records of those twenty-two officers contain exactly the same type of information that Judges Kaufman and Walker have already found to implicate the officers' privacy rights leaving the City without any guidance on how to proceed. The City states that the circuit court mistakenly found that its intervention would not settle the controversy. It asserts that it had a right to seek guidance from the court. Thus, the City contends that this Court should remand this case to the circuit court with directions that a hearing be held and that the City's request for declaratory relief be decided on the merits.

The *Charleston Gazette* agrees that the circuit court's dismissal was premature. However, the *Gazette* argues that this Court should not simply remand the underlying case to the circuit court, but instead, should decide this case on its merits. It points out that it has already been more than one year since its original FOIA request and that by the time the matter is returned to the circuit court and addressed there, then appealed again to this Court, it could be years before the case is finally resolved. The *Gazette* maintains that given the importance of timely record disclosure under FOIA, this case

presents an exception to this Court's usual practice of not considering questions the lower court has not addressed. For example, in *Whitlow v. Board of Educ. of Kanawha County*, 190 W.Va. 223, 226–227, 438 S.E.2d 15, 18–19 (1993), this Court stated:

The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

In this case, we are confronted with very limited and essentially undisputed facts. The constitutional issue raised for the first time on appeal is the controlling issue in the resolution of the case. If the statute is unconstitutional, the case should not be dismissed. Furthermore, the issue is one of substantial public interest that may recur in the future. These two considerations are in line with our basic standards for deciding when to examine matters in a prohibition proceeding. *See Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).

The *Gazette* states that just as in *Whitlow*, there are no disputed material facts in this underlying case. Moreover, the underlying issue controls the outcome of the case and is one of substantial public import that may recur in the future. The *Gazette* contends that sending this case back to the circuit court under these circumstances creates substantial prejudice, and will cause further delay, and likely will only end up with these parties back before this Court years later with nothing substantially different in the record. Thus, the *Gazette* requests that this Court address the underlying issue on the merits.

In *sua sponte* dismissing the City's request for declaratory judgment, the circuit court cited Syllabus Point 4 of *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 475 S.E.2d 55 (1996), which explains that,

In deciding whether a justiciable controversy exists sufficient to confer jurisdiction for purposes of the Uniform Declaratory Judgment Act, West Virginia Code §§ 55–13–1 to –16 (1994), a circuit court should consider the following four factors in ascertaining whether a declaratory judgment action should be heard: (1) whether the claim involves uncertain and contingent events that may not occur at all; (2) whether the claim is dependent upon the facts; (3) whether there is adverseness among the parties; and (4) whether the sought after declaration would be of practical assistance in setting the underlying controversy to rest.

Specifically, the circuit court relied on the fourth factor in concluding that "a declaratory judgment in this matter would not terminate the controversy and, therefore, the Court refuses to enter such a declaratory judgment." The circuit court reasoned that some of the documents sought by the *Gazette* were under seal by orders of both circuit judges Jennifer Bailey Walker and Tod Kaufman, and that "were this court to enter the requested declaratory judgment, the sealed documents would still remain under seal, and thus, the underlying controversy of this matter would persist."

West Virginia Code § 55–13–1 (1941) provides:

Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Moreover, West Virginia Code § 55–13–12 (1941) explains:

This article is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal rela-

tions; and is to be liberally construed and administered.

In the case at hand, the City's complaint for declaratory judgment demonstrated its uncertainty and insecurity with respect to its rights as it sought the necessary guidance from the circuit court. It explained to the court its need for direction in how to respond to the *Gazette's* FOIA request. Nonetheless, the circuit court dismissed the case based on *Hustead* without providing the City or the *Gazette* with an opportunity to be heard concerning the propriety of dismissal.

▮ As we stated in *Litten v. Peer*, 156 W.Va. 791, 797, 197 S.E.2d 322, 328 (1973), "[i]t has always been the policy of this Court to protect each litigant's day in court." It is equally true, of course, that "the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Anderson Nat. Bank v. Luckett*, 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692 (1944). Moreover, W.Va. Const. Art. III, § 10, provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." In Syllabus Point 1 of *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937), we held that:

Section 10, article 3, of the Constitution of West Virginia, properly applied, secures to a litigant a reasonable opportunity to be heard when the processes of the courts are invoked against him; and where that opportunity has been denied by the refusal to grant a reasonable time in which to prepare and file pleadings setting up his defense, this court will not pass on the merits of the case until opportunity is given to file such pleadings in the court of original jurisdiction, and a hearing had thereon in said court.

In Syllabus Point 2 of *Stanton*, we further explained, "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard."

▮ The idea that due process of law prohibits all courts from denying a defendant the right to present a defense to a cause of action is something firmly rooted in our jurisprudence.[2] In *State ex rel. Graves v. Daugherty*, 164 W.Va. 726, 727, 266 S.E.2d 142, 143 (1980), we stated that "[i]t is fundamental to our constitutional structure that parties will be treated fairly by government and courts." As discussed, the circuit court in the case at hand, *sua sponte* dismissed the City's complaint without providing either party an opportunity to present its arguments as to

2. We have stated many times that, "[b]oth federal and state due process clauses require that a party to a law suit be afforded adequate notice and a realistic opportunity to be heard in his own defense." *State ex rel. Thomas v. Neal*, 171 W.Va. 412, 413, 299 S.E.2d 23, 25 (1982). *See Mellon–Stuart Co. v. Hall*, 178 W.Va. 291, 300, 359 S.E.2d 124, 133 (1987) ("Longstanding due process protections such as notice and an opportunity to be heard are scrupulously applied."); *Schupbach v. Newbrough*, 173 W.Va. 156, 158, 313 S.E.2d 432, 435 (1984) ("The due process clauses of our State and Federal Constitutions afford parties the procedural rights of notice and opportunity to be heard."); *In re Willis*, 157 W.Va. 225, 239, 207 S.E.2d 129, 138 (1973) ("One of the basic constitutional guarantees of due process is, of course, that no one shall be deprived of a substantial right by an arm of the State without notice and the opportunity to be heard in a meaningful manner."); *State ex rel. Zirkle v. Fox*, 203 W.Va. 668, 510 S.E.2d 502, 506 (1998) ("The most basic of the procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are notice

and the opportunity to be heard, which are essential to the jurisdiction of the court in any pending proceeding."); *State ex rel. United Mine Workers of America, Local Union 1938 v. Waters*, 200 W.Va. 289, 297, 489 S.E.2d 266, 274 (1997) ( "[T]he petitioners were denied their fundamental constitutional rights by the issuance of an ex parte preliminary injunction against them without notice or an opportunity to be heard."); *Eastern Associated Coal Corp. v. John Doe*, 159 W.Va. 200, 207 n. 2, 220 S.E.2d 672, 678 n. 2 (1975) ("Failure to give notice and opportunity to defend may deprive court of jurisdiction."); *Hutchison v. City of Huntington*, 198 W.Va. 139, 154, 479 S.E.2d 649, 664 (1996) (citation and quotations omitted) ("[I]t is a fundamental requirement of due process to be heard at a meaningful time and in a meaningful manner."); and *Crone v. Crone*, 180 W.Va. 184, 186, 375 S.E.2d 816, 818 (1988) ("[T]he circuit court violated Diana's due process rights in failing to afford her notice and an opportunity to be heard prior to modifying the divorce decree to grant Michael exclusive visitation.").

whether a justiciable controversy existed for purposes of the Uniform Declaratory Judgment Act. *See* Syllabus Point 4, *Hustead, supra.* The City's complaint for declaratory judgment sought "relief from uncertainty and insecurity with respect to rights, status and other legal relations...." *See* W.Va.Code § 55–13–12, *supra.* By dismissing the complaint *sua sponte,* the circuit court denied both parties an opportunity to be heard in violation of their due process rights.

■ Nonetheless, in spite of the aforementioned discussion, our analysis does not end with our conclusion that the circuit could erred by *sua sponte* dismissing the City's request for declaratory relief. We are also faced with the *Gazette's* plea for this Court to address the merits of the underlying issue in consideration of the ·enormous amount of time that has passed since the July 6, 2007, FOIA request. The *Gazette* requests that we remand this case to the circuit court to order the City to disclose the payroll records. Given the specific facts of this case, we find the *Gazette's* argument compelling and believe that sending this case back to the circuit court without guidance on the issue of public employee payroll records would create substantial prejudice, would cause further delay, and would more than likely result in the case returning to this Court again under the same set of facts.

The West Virginia FOIA, W.Va.Code § 29B–1–1, *et seq.,* provides for the disclosure of public records. In declaring the public purpose of our FOIA laws, W.Va.Code § 29B–1–1 (1977) explains:

> Pursuant to the fundamental philosophy of the American constitutional form of representative government which holds to the principle that government is the servant of the people, and not the master of them, it is hereby declared to be the public policy of the state of West Virginia that all persons are, unless otherwise expressly provided by law, entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. The people, in delegating author-

ity, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments of government they have created. To that end, the provisions of this article shall be liberally construed with the view of carrying out the above declaration of public policy.

Moreover, W.Va.Code § 29B–1–3 (1992), states that, "Every person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by section four [§ 29B–1–4] of this article." The statute defines "public body" as

> every state officer, agency, department, including the executive, legislative and judicial departments, division, bureau, board and commission; every county and city governing body, school district, special district, municipal corporation, and any board, department, commission, council or agency thereof; and any other body which is created by state or local authority or which is primarily funded by the state or local authority.

W.Va.Code § 29B–1–2(3). It is not in dispute in this case that the City is a public body within the meaning of the FOIA statute.

■ We have also made clear that, "[t]he disclosure provisions of this State's Freedom of Information Act, W. Va.Code, 29B–1–1 *et seq.,* as amended, are to be liberally construed, and the exemptions to such Act are to be strictly construed. W. Va.Code, 29B–1–1 [1977]." Syllabus Point 4, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985).[3] *See also Daily Gazette Co. Inc. v. W.Va. Development Office,* 198 W.Va. 563, 574, 482 S.E.2d 180, 191 (1996) ("WVFOIA ... was enacted to fully and completely inform the public 'regarding the affairs of government and the official acts of those who represent them as public officials and employees.' W.Va.Code, 29B–1–1 [1977], in part."); *AT & T Communications of West Virginia, Inc. v. Public*

---

**3.** The exemptions in W.Va.Code § 29B–1–4 are similar to those in the Federal Freedom of Information Act. *See Sattler v. Holliday,* 173 W.Va. 471, 318 S.E.2d 50 (1984).

*Serv. Comm'n of West Virginia,* 188 W.Va. 250, 253, 423 S.E.2d 859, 862 (1992) ("The general policy of the [FOIA] act is to allow as many public records as possible to be available to the public." (footnote omitted)).

█ As we stated in *Child Protection Group v. Cline,* 177 W.Va. 29, 33, 350 S.E.2d 541, 545 (1986), the West Virginia Code "exempts disclosure if the 'public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance.'" We further explained,

The ambiguity is that the West Virginia Code requires a balancing test when there has been a "unreasonable" invasion of privacy. The legislature obviously intended "unreasonable" to be a trigger which would invoke § 29B–1–4[a](2) protections. The legislature recognized that certain information about individuals is routinely disclosed as public record and does not rise to such a level that a balancing test need be applied. For example, records of births and deaths, marriages, land sales and other routine, relatively innocuous items, may be disclosed by government without having to resort to a balancing test with each item. By "unreasonable" the legislature means a "substantial" invasion of privacy, i.e., more than what the average person would normally expect the government to disclose about him.

177 W.Va. at 34, n. 8, 350 S.E.2d at 546, n. 8.

At issue in this case is the disclosure of time records of police officers. The City maintains that the records are exempt from disclosure pursuant to W.Va.Code § 29B–1–4(a)(2) and (a)(4). W.Va.Code § 29B–1–4(a)(2), excludes from disclosure:

Information of a personal nature such as that kept in a personal, medical or similar file, if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance: Provided, That nothing in this article shall be construed as precluding an individual from inspecting or copying his or her own personal, medical or similar file[.]

Moreover, W.Va.Code § 29B–1–4(a)(4) exemption includes:

Records of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement[.]

This Court's holding in Syllabus Point 2 of *Manns v. City of Charleston Police Dept.,* 209 W.Va. 620, 550 S.E.2d 598 (2001), provides: "'The primary purpose of the invasion of privacy exemption to the Freedom of Information Act, W.Va.Code, 29B–1–4[a](2) [1977], is to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.' Syllabus Point 6, *Hechler v. Casey,* 175 W.Va. 434, 333 S.E.2d 799 (1985)."

█ In *Manns,* the issue was whether police records, which included internal investigation documents, were exempt from public disclosure pursuant to FOIA as prescribed by W.Va.Code § 29B–1–4(a)(4). We declared in *Manns* that the disclosure of the information would result in a substantial invasion of privacy and that the request in that case would require the disclosure of all claims of misconduct no matter how egregious, unfounded, or potentially embarrassing. This Court in *Manns* further held that the investigative information was obviously given with an expectation of confidentiality. It is clear to us that *Manns* is distinguishable from the case at hand in that the providers of confidential information were third-party public citizens, while disclosure in the *Gazette's* case would have been by public employees and would have involved ministerial payroll information, and not internal investigation documents.

█ As discussed, West Virginia's FOIA provides for the disclosure of public records unless the requested information falls under one of eight exceptions. W.Va.Code §§ 29B–1–1, 29B–1–4. In Syllabus Point 4 of *Manns,* we set forth a test to determine whether the disclosure of certain personal information would constitute an unreasonable invasion of

privacy. Syllabus Point 4 of *Manns* provided that:

> In deciding whether the public disclosure of information of a personal nature under W.Va.Code § 29B-1-4(2) (1980) would constitute an unreasonable invasion of privacy, this Court will look to five factors:
>
> 1. Whether disclosure would result in a substantial invasion of privacy and, if so, how serious.
>
> 2. The extent or value of the public interest, and the purpose or object of the individuals seeking disclosure.
>
> 3. Whether the information is available from other sources.
>
> 4. Whether the information was given with an expectation of confidentiality.
>
> 5. Whether it is possible to mould relief so as to limit the invasion of individual privacy." Syllabus Point 2, *Child Protection Group v. Cline*, 177 W.Va. 29, 350 S.E.2d 541 (1986).

While this Court has not previously addressed whether payroll records of public employees must be disclosed under FOIA, other states have considered this issue and overwhelmingly have construed their open records laws as requiring disclosure of such records. For example, in *Alaska Wildlife Alliance v. Rue*, 948 P.2d 976 (Alaska 1997), the Alaska Wildlife Alliance sought disclosure of public employee and private contractor names and time sheets maintained by the Alaska Department of Fish & Game. The Department refused to disclose several of those names and time sheets; however, the Supreme Court of Alaska held "that time sheets, which indicate merely the hours worked for the public employer, are properly included in the definition of public records [and] not subject to the confidentiality provisions of [state personnel records]." 948 P.2d at 980.

In *Kanzelmeyer v. Eger*, 16 Pa.Cmwlth. 495, 329 A.2d 307 (1974), a resident taxpayer of the Hopewell Area School District sought to examine school district records to determine whether in April and May of 1972 certain professional employees had received pay for unexcused and unauthorized absences from work. She sought access to payroll registers, payroll vouchers, and attendance records. The Commonwealth Court of Pennsylvania explained that, "[t]he instant record clearly establishes that the appellant would be unable to ascertain whether the district had paid its employees for unauthorized absences without access to the attendance record cards." The Court further stated that:

> The cards are, therefore, plainly the kind of record intended to be made available to public examination by the 'Right to Know Law'. Considerations of privacy and confidentiality, as distinguished from regard for reputation and personal security, must yield to the public's right to know about and examine into its servants' performance of duty.

16 Pa.Cmwlth. at 500, 329 A.2d at 310. Moreover, in *Sipe v. Snyder*, 163 Pa.Cmwlth. 232, 245, 640 A.2d 1374, 1381 (1994), the Commonwealth Court enunciated that their public disclosure laws implement "the broad concept that the citizens of the Commonwealth are entitled to have access to records dealing with public funds."

In *Perkins v. Freedom of Info. Comm'n*, 228 Conn. 158, 635 A.2d 783 (1993), the Connecticut Supreme Court disagreed with the plaintiff that a request for the numerical data dealing with a public employee's sick leave records constituted a per se invasion of personal privacy. The Court explained that "when a person accepts public employment, he or she becomes a servant of and accountable to the public. As a result, that person's reasonable expectation of privacy is diminished, especially in regard to the dates and times required to perform public duties." It further stated,

> The public has a right to know not only who their public employees are, but also when their public employees are and are not performing their duties. We conclude that a records request under the FOIA for disclosure of the numerical data concerning an employee's attendance records, including or limited to sick leave, does not constitute an invasion of personal privacy

[and that] disclosure in this instance is required.

228 Conn. at 177, 635 A.2d at 792.

In *Brogan v. School Comm. of Westport*, 401 Mass. 306, 516 N.E.2d 159 (1987), a dispute centered on the issue of whether individual absentee records of school employees were of a personal nature. The requested information included the names of the school committee's employees, and the dates and generic classifications, e.g., "sick day," "personal day," etc., of their absences. The Supreme Judicial Court of Massachusetts concluded that such information did not constitute " 'intimate details' of a 'highly personal' nature," the "kind of private facts that the Legislature intended to exempt from mandatory disclosure." The Court reasoned that the plaintiff had "not requested any information of a personal nature, such as the medical reason for a given absence or the details of family emergencies, nor does the record indicate that any of the absentee records involved such information." 401 Mass. at 308, 516 N.E.2d at 160–161.

In *Hastings & Sons Publishing Co. v. City Treasurer of Lynn*, 374 Mass. 812, 375 N.E.2d 299 (1978), the same Court was not persuaded by the policemen's argument that municipal payroll records are not public records. The Court explained,

> We agree with the [trial] judge's ruling that there was no showing that disclosure of payroll records would constitute an invasion of personal privacy. While we appreciate an employee's desire not to have his or her income publicized, the plaintiff is not seeking disclosure of facts involving " 'intimate details' of a 'highly personal' nature."

374 Mass. at 817–818, 375 N.E.2d at 303. The Court stated that, "[t]he names and salaries of municipal employees, including disbursements to policemen for off-duty work details, are not the kind of private facts that the Legislature intended to exempt from mandatory disclosure." *Id.*

The Court in *Hastings* further explained that, "Municipal employees have long been subject to restrictions and regulations not affecting private employees [and that] courts in other jurisdictions, also finding no invasion of the privacy rights of municipal workers, have required disclosure of payroll records under similar public record statutes." 374 Mass. at 818, 375 N.E.2d at 304. Moreover, "[e]ven if disclosure of municipal payroll records would bring the right of privacy into play, the paramount right of the public to know what its public servants are paid must prevail." *Id.* Likewise, "[s]uch knowledge could significantly add to the citizen's understanding of the government's operations. General salary schedules, obtainable from publication of the collective bargaining agreement, would not provide the details sought by the plaintiff." 374 Mass. at 819, 375 N.E.2d at 304. Finally, the Court concluded that, "[w]ithout delineating the precise scope of the right to privacy afforded by [Massachusetts' statutes], we can state with confidence that disclosure of these payroll records would not constitute an 'unreasonable, substantial or serious interference with (the right of privacy).' " *Id.*

In *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42 (Iowa 1999), a newspaper publisher sought records from the city concerning city employees' sick leave compensation and usage, and employees sought protection from disclosure of information. The Supreme Court of Iowa reasoned that,

> Other jurisdictions have dealt directly with the issue of disclosing sick leave information or absentee cards. Given the accountability demanded of public servants, courts have generally found the nominal privacy interest in nondisclosure outweighed by the public's interest in preventing abuse of governmental vacation and sick leave policies, so long as the disclosed sick leave information is of a nonintimate or nonpersonal character.

601 N.W.2d at 46. The Court further concluded that,

> the district court was correct in observing that "there is an obvious relationship between disclosure of leave records and the public's right to know how its money is spent." The newspaper's inquiry legitimately pertains to individual as well as generalized employee practices. It is conceivably impractical for the public to deci-

pher from an aggregate pool of sick leave and other leave information whether an individual is misusing or abusing benefits.... Thus, ... the public's interest here cannot be satisfied by the district court's limited disclosure in aggregate form without tying it to an individual's name.

Moreover, the Court explained that,

the *Gazette's* request for compensation records does not contain information deemed by other courts as personal or intimate, such as an employee's medical condition, reason for medical leave, or professional evaluation. By statute, the mere fact that a reporting of compensated sick days might cause embarrassment to an individual employee is not a controlling consideration. (Citation omitted). In sum, the compensation allocated to-and used by-individual public employees, whether for salary, sick leave or vacation, is a matter of legitimate concern to the public. So long as the information disclosed does not reveal personal medical conditions or professional evaluations, the public has the right to examine it.

601 N.W.2d at 47–48.

In *State ex rel. Jones v. Myers,* 61 Ohio Misc.2d 617, 581 N.E.2d 629 (Ohio 1991), the Court of Common Pleas of Ohio held that information in the county's payroll records relating to such matters as earnings, statutory withholdings, vacation and sick leave, retirement service credit, and garnishments and court-ordered support payments were "public records" and subject to disclosure, but deductions for deferred compensation plans, saving bond investments, and Christmas club accounts were not public records. The Court specifically held that:

1. The employee's name, designation, employee number, and earnings are public records because no privacy issue exists. The public has an absolute right to ascertain the earnings of its servants. In addition, the issue is moot by stipulation and prior disclosure.

2. Statutorily withheld federal, state and city taxes, and retirement deductions must be disclosed, notwithstanding

that they might be determined by consulting government publications because no privacy right will be invaded according to the Kilroy standard.

3. The vacation and sick leave record must be disclosed. The value of the public interest therein is great, and while the privacy of a sick employee might suffer from disclosure, the invasion is only slight when compared to public interest in preventing the abuse of vacation and sick leave in the public arena. Furthermore, this information is not available elsewhere.

4. Amounts for purchase of retirement service credit and deductions for medical or hospitalization insurance are likewise obviously subject to disclosure under the Kilroy criteria and the Fant–Wooster standards.

61 Ohio Misc.2d at 621, 581 N.E.2d at 631.

In addition to the cases already discussed, a number of other jurisdictions have reached the same conclusion under their FOIAs regarding payroll records, attendance, employment, vacation, or sick leave records, reasoning that such records are not private facts of a personal nature as contemplated by such laws. *See, e.g., Jafari v. Dept. of Navy,* 728 F.2d 247 (4th Cir.1984) (authorizing disclosure of military reservist's attendance records under federal FOIA); *Dobronski v. FCC,* 17 F.3d 275, 277–80 (9th Cir.1994) (affirming judgment compelling disclosure of sick leave records to publisher investigating improper usage of sick leave where records contain no personal medical or health information); *Capital Newspapers v. Burns,* 67 N.Y.2d 562, 505 N.Y.S.2d 576, 496 N.E.2d 665 (1986) (authorizing disclosure of police officer's absentee records); *Buffalo News v. Housing Authority,* 163 App.Div.2d 830, 558 N.Y.S.2d 364 (1990) (requiring disclosure of public housing authority employee payroll, attendance and disciplinary records); *Pottle v. School Comm. of Braintree,* 395 Mass. 861, 864–865, 482 N.E.2d 813, 816 (1985) (names and addresses of municipal school committee's employees were subject to disclosure); *State ex rel. Petty v. Wurst,* 49 Ohio App.3d 59, 61, 550 N.E.2d 214, 216–217 (1989) (pub-

lic's right to inspect payroll records outweighs any nominal invasion of county employee's privacy); *Sapp Roofing Co., Inc. v. Sheet Metal Workers' Intern. Ass'n, Local Union No. 12*, 552 Pa. 105, 713 A.2d 627 (1998) (Private contractor's payroll records which were in possession of school district for work performed pursuant to roofing contract were "public records" under Right to Know Act, as records evidenced a disbursement by the school district); *Cleveland Newspapers Inc. v. Bradley County Memorial Hospital, Bd. of Directors*, 621 S.W.2d 763 (Tenn.App.1981) (Payroll records of public hospital were encompassed within statute providing that all state, county and municipal records shall be open to public inspection unless otherwise provided, and were subject to public inspection); *Tiberino v. Spokane County*, 103 Wash.App. 680, 690, 13 P.3d 1104, 1110 (Wash.App. Div. 3, 2000) ("The purpose of the Act is to keep the public informed so it can control and monitor the government's functioning [and] [g]enerally, records of governmental agency expenditures for employee salaries, including vacation and sick leave, and taxpayer-funded benefits are of legitimate public interest and therefore not exempt from disclosure. Certainly, there exists a reasonable concern by the public that government conduct itself fairly and use public funds responsibly."); *Caple v. Brown*, 323 So.2d 217 (La.App., 1975) (Financial records relating to sheriff's salary fund constituted "public records" within meaning of statute conferring right to examine any and all public records upon elector or taxpayer of state).

■ We have previously held: "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syllabus Point 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959). Thus, in the case at hand, we conclude that the release of the time records would not have constituted a substantial invasion of individual privacy and see no evidence that any of the police officers had a reasonable expectation that their time records would remain confidential. Moreover, there is no evidence before us that the City in any way considered the time records to be an important part of their employment records of their employees.[4] We also recognize that the *Gazette* seeks this information for a valuable public interest and that the information would not otherwise be available from other sources. *See* Syllabus Point 4, *Manns, supra.* As such, we believe that the City should have disclosed the CPD's time sheets since they are public records not exempt from disclosure.[5]

4. We also acknowledge that public documents relating to such matters as names of public employees, their designation, an employee number, payroll records, time sheets, salary amounts, attendance records, numerical data dealing with a public employee's vacation or sick leave records, retirement service credit, and statutorily withheld federal, state and city taxes, are clearly public records and subject to disclosure. Moreover, without delineating the precise scope of the right to privacy afforded by West Virginia's FOIA, we can state with confidence that disclosure of such records would not "constitute an unreasonable invasion of privacy." *See* W.Va. Code § 29B–1–4(a)(2). They simply are not the kind of private facts that the Legislature intended to exempt from mandatory disclosure. Likewise, these ministerial and plainly public documents could not be considered, "[r]ecords of law-enforcement agencies that deal with the detection and investigation of crime and the internal records and notations of such law-enforcement agencies which are maintained for internal use in matters relating to law enforcement" as prescribed by W.Va.Code § 29B–1–4(a)(4). Further-

more, even if some of the aforementioned records were being used as a part of an internal criminal investigation, they would still be subject to disclosure under our FOIA. *See* Syllabus Point 11 of *Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985) (holding that investigatory records portion of FOIA does not include "information generated pursuant to routine administration or oversight, but is limited to information compiled as part of an inquiry into specific suspected violations of the law").

5. The City points out that six of the twenty-eight time sheets are under seal in other court proceedings. However, this Court has indicated that an agreement as to confidentiality between a public body and the supplier of information may not override the Freedom of Information Act. *See Hechler v. Casey*, 175 W.Va. 434, 333 S.E.2d 799 (1985). Moreover, this Court has held that even if a document is a law enforcement record, such document is not automatically excluded from disclosure under FOIA. *See Ogden Newspapers, Inc. v. City of Williamstown*, 192 W.Va. 648, 653, 453 S.E.2d 631, 636 (1994) ("According to our

In sum, this Court believes that the appellants are entitled to inspect and copy the payroll records and that the Circuit Court of Kanawha County erred in denying the relief which was sought in this proceeding. Therefore, having thoroughly reviewed the entire record as well as the relevant statutory and case law in this matter, we find that the circuit court committed reversible error with regard to its *sua sponte* dismissal of the City's declaratory judgment action. We further find that the City must disclose the records requested by the *Gazette* pursuant to FOIA.

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on August 27, 2007, is reversed, and the case is remanded to the circuit court for entry of an order consistent with this opinion.

Reversed and Remanded.

Justice BENJAMIN concurs and reserves the right to file a concurring opinion.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

BENJAMIN, J., concurring.

I concur in the majority decision. In this case, disclosure of the records sought is appropriate.

I write separately, however, to underscore the importance of the statutory exemption from disclosure of records which deal with the detection and investigation of crimes. W.Va.Code § 29B–1–4(a)(4). This statutory section recognizes that records which would otherwise be subject to disclosure, should nevertheless be exempted from such disclosure if they "... deal with the detection and investigation of crime ..." *Id.* I do not believe this exemption applies in this case.

However, it may be that in other situations, the release of payroll records could carry with it the release of related information, such as the location of undercover work by a law enforcement officer, which could otherwise compromise a criminal investigation. While the majority opinion speaks at length about privacy expectations, I believe it also important to recognize the importance of this exception when applicable.

---

case law, the fact that a document is a law enforcement record does not automatically exclude it from disclosure under the FOIA. Once a document is determined to be a law enforcement record, it may still be disclosed if society's interest in seeing the document outweighs the government's interest in keeping the document confidential.").