IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0978

_____

FILED
October 19, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, *ex rel.*
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.;
ALLIANZ GLOBAL RISKS US INSURANCE COMPANY;
ACE AMERICAN INSURANCE COMPANY;
ZURICH AMERICAN INSURANCE COMPANY;
GREAT LAKES INSURANCE SE;
XL INSURANCE AMERICA, INC.;
GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA;
ASPEN INSURANCE UK LIMITED;
NAVIGATORS MANAGEMENT COMPANY, INC.;
IRONSHORE SPECIALTY INSURANCE COMPANY;
VALIDUS SPECIALTY UNDERWRITING SERVICES, INC.; and
HDI-GERLING AMERICA INSURANCE COMPANY,
Petitioners

v.

THE HONORABLE DAVID W. HUMMEL, JR., JUDGE OF THE SECOND
JUDICIAL CIRCUIT, and
AXIALL CORPORATION, and
WESTLAKE CHEMICAL CORPORATION
Respondents

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 19-C-59

WRIT GRANTED AS MOULDED

_____

Submitted: September 23, 2020
Filed: October 19, 2020

Debra Tedeschi Varner, Esq.
James A. Varner, Sr., Esq.
Varner & Van Volkenburg PLLC
Clarksburg, West Virginia

Myles A. Parker, *pro hac vice*
Alexandra F. Markov, *pro hac vice*
Carroll, Warren & Parker
Jackson, Mississippi

Counsel for Petitioners

Jeffrey V. Kessler, Esq.
Berry, Kessler, Crutchfield, Taylor &
Gordon
Moundsville, West Virginia

Travis L. Brannon, Esq.
Thomas C. Ryan, Esq.
John M. Sylvester, *pro hac vice*
Paul C. Fuener, *pro hac vice*
David R. Osipovich*, pro hac vice*
Sarah M. Czypinski, *pro hac vice*
K&L Gates LLP
Pittsburgh, Pennsylvania

Counsel for Respondents

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1996).

2. "Ordinarily, in the absence of a written motion for summary judgment by one of the parties, the court is not authorized *sua sponte* to grant a summary judgment." Syllabus Point 2, *Gavitt v. Swiger*, 162 W. Va. 238, 248 S.E.2d 849 (1978).

3. "As a general rule, a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception to this general rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment." Syllabus Point 4, *Loudin v. National Liability & Fire Insurance Company*, 228 W. Va. 34, 716 S.E.2d 696 (2011).

4. "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

Armstead, Chief Justice:

In this petition for writ of prohibition, both parties agree that this Court should grant the requested relief to the extent that it prohibits the circuit court from enforcing its *sua sponte* order dismissing Count III of Axiall Corporation ("Axiall") and Westlake Chemical Corporation's ("Westlake") (collectively, "Respondents") complaint and finding that West Virginia law applied to all of Respondents' bad faith claims. Petitioners argue, and Respondents disagree, that this Court should extend the writ to order that Georgia law – and only Georgia law – applies to all claims raised in the underlying complaint.

For the reasons set forth below, we agree that the circuit court exceeded its legitimate authority by *sua sponte* dismissing Count III of the complaint and finding that West Virginia law applied to all bad faith claims, as that issue had not been briefed, argued, or developed by the parties. However, we decline to extend the writ to find that Georgia law applies to the entire dispute, as a writ of prohibition is not the proper avenue for such relief.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2016, a chlorine tank train car ruptured at the Natrium Plant located in Proctor, West Virginia. This rupture caused damage to the Natrium Plant, which is owned and operated by Westlake. Axiall is a wholly-owned indirect subsidiary of Westlake.

1

Axiall sought coverage under its insurance policies for damages caused by the leak. Among them, Petitioners issued thirteen separate policies in which each Petitioner subscribed to certain "quota-shares" of the insurance for the Natrium Plant. These policies, subject to their conditions, endorsements, and exclusions, provided coverage for all risks of direct physical loss or damage to the insured property.

On April 9, 2019, over two-and-a-half years after the claim was first made, Petitioners denied coverage pointing to exclusions in the policies for faulty workmanship, corrosion, and contamination. That same day, Petitioners filed a declaratory judgment action in the State of Delaware to determine their rights and responsibilities under the policies.[1] The next day, April 10, 2019, Respondents filed the underlying complaint asserting five separate counts: (1) declaratory judgment; (2) breach of contract; (3) bad faith under Georgia law; (4) bad faith under West Virginia law; and (5) statutory bad faith under the West Virginia Unfair Trade Practices Act.

Petitioners subsequently filed a motion titled "Defendants' Motion to Dismiss or Stay In Favor of First-Filed Foreign Action." In that motion, Petitioners sought to either dismiss or stay the West Virginia proceeding because (1) the Delaware action was filed earlier; (2) West Virginia was not a convenient forum; and (3) West Virginia was not the proper venue for this action. The circuit court held a hearing on the motion to dismiss

---

[1] The Delaware action has been stayed.

2

on September 5, 2019, and denied the motion. However, the circuit court, *sua sponte*, without anyone moving, briefing, or seeking such relief, dismissed[2] Count III – Bad Faith – Violation of Georgia Code § 33-4-6, finding:

> It is further **ORDERED** that Count III of Plaintiffs' Complaint, titled "Bad Faith – Violation of Georgia Code § 33-4-6," is hereby **DISMISSED**. The Court **FINDS** that while Georgia law governs the coverage issues pled in Count II, Plaintiffs' bad-faith claims against Defendants are governed by West Virginia law, and therefore Count III of Plaintiff's Complaint pled under Georgia law cannot be maintained simultaneously with Counts IV and V pled under West Virginia law. The Court acknowledges that this issue has not been briefed or argued before the Court.

On October 25, 2018, Petitioners filed the instant petition, and by order of this Court entered on January 30, 2020, a rule to show cause issued.

## II.  STANDARD OF REVIEW

In Syllabus Point Four of *State ex rel. Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1996), this Court explained:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced

---

[2] After the circuit court made its ruling, this matter was referred to the business court division.

3

in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

With this standard in mind, we turn to the issues raised in this writ.

### III. ANALYSIS

The parties agree that the circuit court exceeded its lawful authority when it *sua sponte* dismissed Count III of the complaint and held that West Virginia law applies to Respondents' bad faith claims. A second issue – on which the parties strenuously disagree – is whether the choice-of-law provision contained in the parties' insurance contract applies to the entire dispute below. We will examine each issue in turn.

1.    *Sua Sponte* Dismissal of Count III and Ruling On West Virginia Law

We believe that the circuit court committed clear error as a matter of law by *sua sponte* dismissing Count III. The parties appeared for argument on Petitioners' motion to dismiss or stay on September 5, 2019. The parties briefed and argued the issues raised in that motion. No party asked the circuit court to dismiss Count III of the complaint. No party asked the circuit court to find that West Virginia law applied to the bad faith claims

4

pled in the complaint. No party briefed these issues and no party argued for or against such relief.

Although this issue arises from the *sua sponte* grant of a motion to dismiss, we believe that this Court's prior rulings on *sua sponte* granting of summary judgment are persuasive. In that context, we have held that "[o]rdinarily, in the absence of a written motion for summary judgment by one of the parties, the court is not authorized *sua sponte* to grant a summary judgment." Syllabus Point 2, *Gavitt v. Swiger*, 162 W. Va. 238, 248 S.E.2d 849 (1978). In this same context we have held that:

> As a general rule, a trial court may not grant summary judgment *sua sponte* on grounds not requested by the moving party. An exception to this general rule exists when a trial court provides the adverse party reasonable notice and an opportunity to address the grounds for which the court is *sua sponte* considering granting summary judgment.

Syllabus Point 4, *Loudin v. Nat'l Liab. & Fire Ins. Co.*, 228 W. Va. 34, 716 S.E.2d 696 (2011). Likewise, in the context of a *sua sponte* to dismissal we have reasoned:

> As we stated in *Litten v. Peer,* 156 W. Va. 791, 797, 197 S.E.2d 322, 328 (1973), "[i]t has always been the policy of this Court to protect each litigant's day in court." It is equally true, of course, that "the fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right for which the constitutional protection is invoked." *Anderson Nat. Bank v. Luckett,* 321 U.S. 233, 246, 64 S.Ct. 599, 88 L.Ed. 692 (1944).

*In re Charleston Gazette FOIA Request*, 222 W. Va. 771, 777, 671 S.E.2d 776, 782 (2008). Accordingly, we agree that a writ should be granted prohibiting enforcement of the circuit court's *sua sponte* order dismissing Count III of Respondents' complaint and finding that

5

West Virginia law applied to the bad faith claims. At the bare minimum, the circuit court should have given the parties notice and the opportunity to respond to the grounds for dismissal the circuit court was considering.

2.      Choice-of-Law

Moving to the second issue, we reiterate that procedurally this matter is before us on a writ of prohibition. Petitioners argue that this Court should now decide whether this action is governed by the Georgia choice-of-law provision in the contract. Both parties acknowledge that the insurance contract in question contains a choice of law provision which provides, "[a]ny dispute concerning or related to this insurance will be determined in accordance with the laws of the State of Georgia." Petitioners essentially argue that no other law, except the law of the State of Georgia, applies to the underlying complaint. On this issue, they quote *Hoover* for the proposition that they "ha[ve] no other adequate means, such as direct appeal, to obtain the desired relief." Syllabus Point 4, in part, *Hoover*. Petitioners fail, however, to meet the additional factors set forth in *Hoover* to entitle them to the prohibitory relief. Petitioners argue that this Court should – on the grounds of judicial economy – proceed to rule on this issue. They further assert that Axiall was a sophisticated entity and the Georgia choice-of-law provision should be strictly construed against Axiall.

In their brief, responding to this argument, Respondents state:

> While providing that any dispute "concerning or relating to this insurance will be determined in accordance with the laws of the State of Georgia," this provision does not specifically exclude the application of the laws of other states to, for example, bad-faith claims-handling issues involving coverage under the Policies. Indeed, application of Georgia's conflict-of-law rules may result in the application of West Virginia bad-faith law to Westlake's bad-faith claims. Aware of the sparseness of this provision and the potential for ambiguity in its wording, the Insurers assert – without any evidentiary support whatsoever – that it was Axiall who drafted this wording. The Insurers' reliance on this and other similar assertions in their Petition, coupled with the fact that there has not been any discovery in this case, is yet another reason why the Insurers' Petition is not the proper vehicle for determining choice-of-law issues.

Moreover, during oral argument, Respondents argued that there is ongoing discovery between the parties regarding the very issues arising from the drafting of the choice-of-law provision. Accordingly, it is clear to this Court that the choice-of-law issue is not nearly as clear-cut as Petitioners would make it out to be.

We are mindful that a writ of prohibition is an extraordinary remedy and not available in routine circumstances:

> [T]his Court will use prohibition in this discretionary way to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance.

7

*State ex rel. Vanderra Resources, LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d 35, 40 (2019) (*citing with approval* Syllabus Point 1, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Grp., Inc. v. King*, 233 W. Va. 564, 759 S.E.2d 795 (2014)).

Application of the *Hoover* factors through the lens of *Vanderra* demonstrates that Petitioners have not established that this Court should decide the choice-of-law question in the context of an extraordinary writ. Petitioners have an adequate means to obtain relief by filing an appropriate motion, at an appropriate time, before the business court. Petitioners are neither damaged nor prejudiced by making their arguments before the business court, as they will still maintain the ability, should the business court deny such relief, to appeal any adverse ruling to this Court. Petitioners cannot demonstrate that there was a clear legal error because this issue has yet to be decided below with adequate findings for our review. The lack of a circuit court ruling with sufficient findings on this issue makes it impossible for this Court to "correct . . . substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate. . . ." *Id.*

We are mindful that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1." Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). We

8

cannot say that the circuit court has abused its discretion or lacks jurisdiction when it has made no determination on the question with sufficient findings and conclusions to permit us to undertake a thorough review. Accordingly, the parties may raise this issue upon remand to the business court upon an appropriate and timely motion.

## IV. CONCLUSION

For the reasons set forth herein, we vacate the circuit court's October 22, 2019, order dismissing Count III of the complaint and finding West Virginia law applies to the bad faith claims contained in the complaint and remand the case to the business court for further proceedings consistent with this opinion. However, we decline Petitioners' invitation to extend our ruling to find that the Georgia choice-of-law provisions govern this action and leave such determination to the business court upon remand.

Writ granted as moulded.